Alan R. POKRZYWINSKI,
Petitioner/Respondent,

v.

Jane K. POKRZYWINSKI, n/k/a Jane K. Hicks, Respondent/Appellant.

No. ED 75840.

Missouri Court of Appeals,
Eastern District,
Union Division.

Dec. 14, 1999.

Bill T. Walker, Granite City, IL, for appellant.

Charles A. Hurth, III, Union, for respondent.

WILLIAM H. CRANDALL, Jr., Judge.

Mother, Jane Pokrzywinski, appeals from the judgment of the trial court entered on her motion to modify the decree of dissolution of her marriage to father, Allen Pokrzywinski. We affirm.

Our review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). On appeal, we do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *L.J.B. v. L.W.B.*, 921 S.W.2d 23, 24 (Mo.App. E.D.1996). We recognize the superior position of the court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in the transcript. *Id.*

The evidence established that in September 1994, the trial court entered the decree of dissolution and incorporated the provisions of the parties' separation agreement, including those related to child custody. In accordance with the separation agreement, the court awarded parents joint legal and physical custody of the two children born of the marriage, a daughter born August 1985, and a son born October 1993. Also pursuant to the separation agreement, parents were to maintain their residences within a 50–mile radius of the children's maternal grandparents' home in Pacific, Missouri, and relocation beyond that point required the consent of both parents.

In February 1995, mother filed a motion to modify, seeking primary legal and physical custody of the children. Father filed a motion to modify in July 1995, seeking the same. At trial, father sought primary legal and physical custody of his son only. In October 1997, mother filed an amended motion to modify, seeking sole legal and

physical custody as well as permission to relocate the children to the State of Illinois where her new husband, Richard Hicks, lived. Father refused to consent to the move.

Mother wanted to move the children to a 100–acre cattle and horse ranch that Mr. Hicks had inherited. The ranch had been in his family for three generations and was unencumbered by any debt. It was located in Steelville, Illinois, which was about 95 miles, or a two-hour drive, from Pacific, Missouri. Mother stated that she wanted permission "to move so [she] can be with [her] husband and children, to help him run the ranch."

Mother had been a flight attendant for Trans World Airlines for 21 years and intended to continue working at that job. It took approximately 1 hour and 15 minutes to drive from the ranch to the St. Louis airport. At the time of the hearing, she was job-sharing, so that she worked about 13 days every other month. Her parents (hereinafter grandparents) frequently watched the children when she worked. If the children were allowed to move to Illinois, grandparents intended to move there as well. Mother said she wanted grandparents to live close to her, because grandfather was ill. At the time of the hearing, she and the children were residing with grandparents in Pacific, Missouri.

Mr. Hicks testified at the hearing. His occupation was trading in grain futures. At the time of the hearing, he was working out of his home; but met with clients every other Saturday at his office in Collinsville, Illinois, more than 50 miles from the ranch. He conducted his business by trading over the computer or telephone. He stated that he could do the same thing in Missouri, but it was better to be in Illinois, because Illinois was "one of the larger grain producing states" and he could keep his "finger on the pulse" there. He stated that he was "one of the best [traders] around" and that he earned a "fantastic living" in his profession. Although he had lived at the ranch since

1990, prior to that time he had lived other places. His hobbies included big game hunting and playing polo.

Father testified that from the time mother sought judicial approval of moving the children to Illinois, father and daughter's relationship had deteriorated and daughter refused to participate in visitation with father. Mother did not force her to do so. Father maintained contact with son, however, and exercised his visitation rights with him. Mr. Hicks had told daughter that he was interested in adopting her. Mr. Hicks used terms such as "scum bum mechanic" and "nobody" when referring to father within hearing of the children. The trial court denied mother's request to relocate the children to Illinois. The trial court overruled mother's and father's motions to modify, except to order family counseling and to forbid anyone from smoking in the residence or automobile when son was present because of his asthma. The court also ordered each party to pay his or her attorney's fees and to share equally in paying the guardian ad litem fees.

Mother's sole point on appeal is that the trial court erred in refusing to modify the decree of dissolution to permit the children to move to Illinois.

In a modification proceeding, the court determines whether, based on facts that have arisen since the prior decree, a substantial change has occurred in the circumstances of the children or the children's custodian. *Baumgart v. Baumgart,* 944 S.W.2d 572, 575–576 (Mo.App. W.D. 1997). Next, the court must consider whether, in light of the changed circumstances, a modification is necessary to serve the best interests of the children under section 452.410, RSMo (1994). *Id.* at 576. Because modification involves child custody, the trial court is accorded greater deference than in other cases. *A.J.K., by R.K. v. J.L.,* 980 S.W.2d 81, 84 (Mo.App. E.D.1998). In the present case, the court concluded:

> [W]hile there has been a continuing and substantial change in circumstances

since the existing decree was entered, such changes do not warrant a modification of the decree authorizing the relocation of the principal residence of the children to the State of Illinois; that the proposed move to Illinois would not be in the best interest of the children; and that the move to Illinois would have a serious detrimental effect upon the children and especially their relationship with their father ... and would destroy the opportunity of continuing to foster frequent and meaningful contact. It would also destroy the joint custody arrangement of the decree which the Court finds to continue to be in the best interest of the children.

When determining whether to allow a parent to remove a child from the state, the paramount concern is the best interest of the child. *Puricelli v. Puricelli,* 969 S.W.2d 289, 296 (Mo.App. E.D. 1998). When determining the child's best interest, courts must consider the needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child. *Id.* However, "[i]n our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area...." *In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo. App.1986). This court has recognized and applied four factors as "particularly relevant" to determine the propriety of a relocation by a custodial parent. *Riley v. Riley,* 904 S.W.2d 272, 277 (Mo.App. E.D. 1995). We analyze each factor in turn.

(1) *The prospective advantage of the move for improving the general quality of life for the custodial parent and child.*

Here, the evidence was that prior to mother's marriage to Mr. Hicks the joint custody arrangement was working. Father had the children three to four days per week, was active in the children's lives, and took the children on several trips. The court pointed out that "[a]ll this changed dramatically upon the marriage of [mother] and Mr. Hicks" when the relationship between mother and father became strained. The court stated the cause of this strain was the "attitude and active role Mr. Hicks took in involving himself in the relationship between [father] and [mother] and with the children."

The children lived their entire lives in Pacific, Missouri. Daughter attended grade school, played sports, and had many friends there. Grandparents lived in Pacific. The children enjoyed a close relationship with grandparents, who watched them when neither parent was available. Although grandparents expressed a desire to move to Illinois, the evidence was that grandfather was ill and that they had taken no steps toward relocation. There is nothing in the record to indicate that the quality of life for mother and the children would be diminished by remaining in Missouri.

The move to the ranch in Illinois would make it difficult for father to see son and would afford him little opportunity to repair his relationship with daughter. The relocation would further isolate the children from their father and would be detrimental to their developing and sustaining a meaningful relationship with him.

Further, the guardian ad litem (GAL) noted in his report that although the quality of mother's and the children's lives might be improved by the material items Mr. Hicks could provide, he felt the overall quality of the children's lives would not be improved. The first factor does not favor mother.

(2) *The integrity of the custodial parent's motives in relocating.*

There is no evidence in the record that mother and Mr. Hicks had no viable alternative but to move to the ranch in Illinois. Mother continued to work as a flight attendant and the ranch was farther away from the airport than Pacific. Mr. Hicks testified that he worked out of the home, that he conducted his trading business over the computer and telephone, that he had office hours every other Saturday at a location more than 50 miles from

the ranch, that he had lived places other than the ranch over the years, and that he could work in Missouri. In addition, Mr. Hicks' own testimony suggested that living at a location other than the ranch would not impose a financial hardship on him.

Further, there was no showing that the move was being undertaken for economic advantage or for employment opportunities. *See Jones v. Jones,* 903 S.W.2d 277, 283 (Mo.App. W.D.1995). This was not a situation where a parent's spouse accepted a job transfer after the marriage, *see, e.g., Riley,* 904 S.W.2d at 272, or where a parent's spouse had an established residence and was working in another location at the time of the marriage. *See, e.g., Maher v. Maher,* 951 S.W.2d 669 (Mo.App. E.D. 1997). The only apparent motive for the move to the ranch in Illinois was Mr. Hicks and mother's desire to live there. Yet, the mere desire to relocate, versus the need to do so, is not sufficient. *Puricelli,* 969 S.W.2d at 297. In addition, there was no demonstration that the family's needs could not be met in Missouri. *Id.*

The GAL stated in his report:

> Although I believe the natural mother is sincere in her desire to move to Illinois, it is Mr. Hick's testimony that he could conduct his business here in Missouri, thereby allowing the children to remain in their present environment and within jurisdiction of the Court. It is Mr. Hick's insistence that his new wife move to Illinois which is causing the issue before the Court, and I therefore do not believe that it is in the children's best interest as to the mother's motives for moving to Illinois.

The second factor does not favor mother.

(3) *The integrity of the non-custodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support.*

■ There was no evidence to suggest father was motivated by financial gain in his opposition to the move. Child support was not addressed at the hearing, except for father's testimony that he was current in his child support payments and wanted child support to cease if the court award him custody of son. Father's financial gain was not an issue.

Mother ascribes an improper motive to father's opposition to the move because of his "willingness to split the children and oppose only the relocation of his son ... with full knowledge of the close relationship between his son and daughter." We disagree. Father's resistance to the relocation to Illinois was premised on his concern about maintaining his relationship with his children. Although father sought custody only of son, that decision was prompted by the deterioration of his relationship with daughter and her reluctance to have any contact with him. As the trial court stated with regard to Mr. Hicks' and mother's conduct toward father:

> Mr. Hicks has treated [father] very rudely and has in speech and writing referred to him in insulting and demeaning terms, in the presence of the children. He has cursed and yelled at him over the phone and has refused to let [father] speak with [mother]. He has even written a letter demanding that [father] leave "his family" alone, and, in one instance, mentioned to [daughter] the possibility of adoption, both ill-advised actions. He has referred to [father] with the demeaning reference of "Pokey Boy" to the extent that the son has even called [father] by that name. He has referred to him as a "scum bum mechanic" and a "nobody". [Mother], too, has referred to [father], in the presence of the children, as "pathetic father," a "loser," and "sorry husband."

Father's motives for opposing the move were not improper. The third factor weighs against mother.

(4) *Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the children if relocation is permitted.*

■ In joint physical custody situations, such as here, courts have been less willing

to find that there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the relationship with the parent opposing the move. *See, e.g., Puricelli,* 969 S.W.2d at 297; *McElroy v. McElroy,* 910 S.W.2d 798, 803 (Mo.App. E.D.1995). Father usually had custody of the children from 4:00 p.m. on Thursday until Sunday evening, plus holidays, vacations, and other days. At trial, mother proposed that visitation be modified so that father had custody of son every other weekend and more time in the summer. She proposed no visitation schedule for daughter. In addition, before daughter severed contact with father, father had participated in her sports and school activities. Thus, the move to Illinois would greatly decrease father's participation in the lives of the children. As the GAL stated:

> It is my belief that if the children are allowed to move to Illinois the natural mother will do nothing to foster the building of any type of relationship with the natural father and [daughter]. Although the natural mother states that she will provide transportation back and forth to Missouri, I question whether this arrangement will last if the children are allowed to move to Illinois.
> ... It is my belief that if the children are allowed to go to Illinois that the contacts with the natural father will decrease and the possibility of a breakdown in the father-son relationship between the natural father and [son] will occur.

The fourth factor weighs against mother.

Mother is not entitled to an order permitting removal of the children just because she asks for one. *Carter v. Schilb,* 877 S.W.2d 665, 667 (Mo.App. W.D.1994). Here, mother failed to show that the needs of her family could not be met in Missouri; and the move appears to be unnecessary and only a matter of convenience. The conclusion of the trial court that it would not be in the children's best interests to move to Illinois was supported by substantial evidence. The trial court did not err in denying mother's request to relocate the children.

The judgment of the trial court is affirmed.

RHODES RUSSELL, Chief Judge, and RICHARD B. TIETELMAN, Judge: Concur.