**Gerald ABERNATHY, Jr., Appellant,**

v.

**Kristine MEIER, Respondent.**

**No. ED 77586.**

Missouri Court of Appeals, Eastern District, Division Two.

May 29, 2001.

Michael B. Stern, Michael B. Stern, L.L.C., Clayton, MO, for appellants.

Philip E. Adams, Clayton, MO, for respondent.

## OPINION

JAMES R. DOWD, Judge.

Gerald Abernathy, Jr., (father) appeals the trial court's judgment which adopted the findings and conclusions of Family

Court Commissioner, Ellen Levy Siwak, permitting Kristine Meier (mother) to relocate to Portsmouth, New Hampshire with their son, Sean Meier. We affirm.

We view the facts in the light most favorable to the trial court's judgment. *Pokrzywinski v. Pokrzywinski*, 8 S.W.3d 222, 223 (Mo.App. E.D.1999). Kristine Meier gave birth to Sean Meier on February 1, 1994. Eight months later, on November 18, 1994, Ms. Meier and Appellant, Mr. Abernathy, entered into a consent order establishing Mr. Abernathy's paternity. Mother was awarded primary physical and legal custody of Sean and father was granted temporary custody. Father and mother never married, nor did father ever live with mother and Sean.

The consent order granted father custody of Sean every other weekend, for six weeks in the summer and for four hours every Tuesday and Thursday morning. In August of 1996 this custody arrangement was modified so that father obtained custody for three days every twenty-one day cycle and for two weeks each year. At the time of trial, father maintained custody of Sean every Wednesday night, every other weekend, alternating holidays and every other week during the summer.

During the spring and summer of 1998 Sean began exhibiting extreme changes of behavior when father would pick him up for his periods of temporary custody. Sean would cling to his mother, hide behind doors, and even run to a neighbor's house to avoid visits with father. Mother became concerned about this behavior and notified the guardian ad litem, Nathan Cohen. Cohen recommended that Sean see a psychologist and mother followed that recommendation by scheduling consultation with Dr. Lynn Sharp Taylor. Despite being invited, father refused to attend these sessions, even though mother offered to pay for them in their entirety.

In late August 1998, Sean again exhibited this behavior when father attempted to pick him up from tae kwon do class. Sean cried and grabbed onto others to avoid being taken by father. Once father managed to place Sean in his car, he struck Sean once on the face. Mother became even more concerned when she learned of this incident and she contacted the guardian ad litem to ask what measures could be taken.

On September 1, 1998, the guardian ad litem filed a Petition for Order of Child Protection in the interest of Sean and against father. On September 22, 1998, the court found that the allegations were not proven, but treated the Petition as a Motion for Relief from Judgment under Rule 74.06(b) and set the matter for presentation of further evidence. On December 9, 1998, the court entered an Interim Consent Order, which continued the matter, limited the father's visitation so that he no longer had overnight visits with Sean, and ordered father and mother to participate in counseling with Dr. Lawrence Kogan. Counseling improved relations between Sean and father. Father apologized to Sean for the incident, and he promised that it would never happen again. On May 10, 1999, the court entered another Interim Consent Judgment of Temporary Custody, restoring father's overnight visitation rights and requiring the parties to continue counseling.

Mother has been Sean's primary custodian since birth, and according to all accounts, she has been an attentive and responsible parent. The record is replete with strong evidence of mother's parenting skills as well as her efforts to create meaningful contact between Sean and his father.

Father is an employee of the Arnold Police Department working as a "School Resource" and "D.A.R.E." officer. In this

capacity he teaches a 17 week anti-violence program at Fox High School. Father now lives with his wife Jennifer, her child from a previous relationship, age six, and a child, age two born of the marriage between Father and Jennifer. Father also has another daughter, age five, born of a relationship between father and a third woman whose name does not appear of record. Father became aware of that child's existence within the last year; she does not live in his current household but he sees her every other weekend.

On August 16, 1999, mother notified father in writing that she was accepting a position with Hasbro Interactive, a toy company in Beverly, Massachusetts, and that she intended to relocate there with Sean and her husband, Bernard Jankowski. Father initiated legal action to prevent Sean's relocation, objecting to the change in Sean's principal residence and requesting a transfer of custody if mother relocated.

At the time of trial mother was 28 years old. She had worked for Trendmasters in St. Louis for five years and was earning $50,200 annually, with bonuses ranging from three to four percent of her base salary. The evidence favorable to the judgment established that mother had no further opportunities for advancement at Trendmasters until her boss retired or left the company, and that neither of these would happen in the near future. Trendmasters offered no pension plan or pre-tax childcare. Mother's annual salary at Hasbro would be $55,000, with bonuses estimated to be at least 15% of her base salary. Hasbro offered a pension plan, health insurance that would save mother $3,000 annually, and a pre-tax childcare program. Also, Hasbro offered mother the opportunity for career growth.

After a trial, the court entered a judgment and order of modification permitting mother to move to Portsmouth, New Hampshire. In doing so, the court applied the four-factor test announced in *Michel v. Michel*, 834 S.W.2d 773, 777 (Mo.App. S.D. 1992) to determine whether the relocation was in the best interests of Sean. Those factors are: (1) the prospective advantage of the move in improving the general quality of life for the custodial parent and child; (2) the integrity of the custodial parent's motives in relocating; (3) the integrity of the non-custodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support; (4) whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child if relocation is permitted. *Id.*

With regard to the first factor, the trial court found that mother's employment at Hasbro provides her with career opportunities that do not currently exist in the St. Louis area and benefits that were unavailable at her former employment. The court also found that there was credible evidence that the curricula of the schools in the Portsmouth area were comparable to or better than the school Sean was then attending in St. Louis. On this basis, and the fact that father presented no evidence regarding the general quality of life in the Portsmouth area, the court concluded that the first factor favored mother.

With regard to the second and third factors, the court found that there was no evidence to suggest bad faith on the part of either mother in seeking to relocate or father in opposing it. The court also found that mother has cooperated with father in the past and shown her willingness to work with father to improve his relationship with Sean.

Treating the fourth factor, the court found that the relocation to Portsmouth, New Hampshire would provide a realistic opportunity for visitation and an adequate basis for preserving and fostering father's relationship with Sean, given the revised parenting plan approved by the court. The revised parenting plan provides that mother remains the sole legal custodian of Sean, but grants father extensive visitation rights. According to that plan, father is afforded visitation one weekend each month between September and May, inclusive, and may select that weekend to include a long weekend. Father is also granted custody of Sean for eight weeks during the summer, one week during Spring Break and Christmas vacation. The court ordered mother to "pay the costs of transportation for Father to exercise" his visitation rights over the summer, Spring and Christmas breaks. Mother is also ordered to pay the transportation costs of every other monthly weekend visitation actually exercised by father between September and May.

Father appeals, arguing that there was no evidence to support the trial court's finding that the move would improve the general quality of life for Sean and that the new parenting plan would ensure father a realistic opportunity to maintain an appropriate relationship with Sean.

STANDARD OF REVIEW

In a modification proceeding, the trial court determines whether, based on facts that have arisen since the previous decree, a substantial change has occurred in the circumstances of the children or the children's custodian. *Pokrzywinski*, 8 S.W.3d at 224. Next, the court considers whether, in light of the changed circumstances, a modification is necessary to serve the best interests of the children

under section 452.410, RSMo (1994). *Id.* When determining whether to allow a parent to remove children from the state, the paramount concern is the best interests of the children. *Puricelli v. Puricelli*, 969 S.W.2d 289, 296 (Mo.App. E.D.1998). Disputes concerning the relocation of children must be resolved on their particular facts rather than by rigid application of rules. *Green v. Green*, 26 S.W.3d 325, 327 (Mo. App. E.D.2000). Because the trial court is in a superior position to determine the credibility, sincerity, character and other intangibles of the witnesses, we presume custody awards are made in the best interests of the children. *Gismegian v. Gismegian*, 849 S.W.2d 201, 202 (Mo.App. E.D. 1993).

We will not disturb the trial court's judgment concerning what serves the best interests of a child unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Thomas v. Thomas*, 989 S.W.2d 629, 633 (Mo.App. W.D.1999). We afford the trial court greater discretion in determining child custody issues than in other matters. *Hicks v. Hicks*, 969 S.W.2d 840, 843 (Mo. App. W.D.1998). Where there is conflicting evidence, we defer to the trial court and will affirm the trial court's judgment even if there is evidence that would support a different conclusion. *Wild v. Holmes*, 869 S.W.2d 917 (Mo.App. E.D. 1994). We will not disturb the trial court's determination of custody unless it is manifestly erroneous and the welfare of the children demands a different result. *Hicks*, 969 S.W.2d at 843.

ANALYSIS

Owing to amendments of § 452.377 [1] in 1998, the Missouri Supreme Court has re-

---

**1.** All statutory references are to RSMo 2000    unless otherwise specified.

cently declared that the four-factor *Michel* test employed by the trial court here is "inconsistent with ... [the new] statutory requirements and shall not be used in determining the child's best interests." *Stowe v. Spence*, 41 S.W.3d 468 (Mo. banc 2001). In *Stowe* the trial court, in violation of § 452.377.10, failed to "specify how the transportation costs will be allocated between the parties and adjust the child support, as appropriate, considering the costs of transportation." *Id.* For this reason the Supreme Court reversed and remanded the case. *Id.*

Prior to the 1998 amendments, § 452.377 provided no standard for determining when relocation of a child would be allowed. To fill this void, the courts fashioned the four-part test employed by the trial court here. *See Michel*, 834 S.W.2d at 777. In 1998 the General Assembly amended § 452.377. Among the many changes, the legislature inserted a standard by which courts should determine whether the custodial parent should be permitted to relocate a child. Section 9

now provides: "The party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child." § 452.377.9. Section 10 requires the court to make findings and to order specific arrangements regarding the travel costs associated with the visitation rights of the non-custodial parent. § 452.377.10.

There are three essential differences between the standard announced in sections 9 and 10 of § 452.377 and the four-part *Michel* test. First, unlike the *Michel* test, section 9 makes no reference to the custodial parent's welfare. Rather than looking to the "general quality of life for the custodial parent and child" (*Michel*, 834 S.W.2d at 777), section 9 requires the court to determine only that the relocation is in the best interests of the child. § 452.377.9. This, presumably, is to be done in accordance with the factors laid out in § 452.375.2.[2] Second, section 9 drops the requirement that the non-relocating parent show good faith in opposing the move and simply requires the relocating parent to

---

**2.** Section 452.375.2 provides:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

The fact that a parent sends his or her child or children to a home school, as defined in section 167.031, RSMo, shall not be the sole factor that a court considers in determining custody of such child or children.

shoulder the burden of establishing good faith in proposing the move. Third, section 10 of § 452.377 expands on the fourth part of the *Michel* test. *Michel* required the court to determine whether there was a "realistic opportunity for visitation" that would "provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child ..." *Michel*, 834 S.W.2d at 777. Section 10 requires the court not only "to assure that the child has frequent, continuing and meaningful contact" with the noncustodial parent, but also requires the court to allocate the transportation costs and adjust the child support accordingly.[3]

In determining whether the trial court complied with § 452.377.9 we examine the court's findings and the record to determine whether there is substantial evidence that the relocation is proposed in good faith and is in the best interest of the child. Simply because the trial court considered the "general quality of life for the custodial parent and child" and section 9 makes no reference to the welfare of the custodial parent does not mean that the custodian's circumstances may not be considered as a factor in determining the best interests of the child. Sections 452.377 and 452.375 were rewritten as part of the 1998 amendments. They are part of a single statutory scheme and must be read together. Section 452.375.2, which lays out the standard for determining the best interests of the child, says: "The court *shall consider all relevant factors* ..." (emphasis added). The custodial parent's economic, emotional and physical well-being are relevant factors to consider in determining the child's best interests. Section 452.375.2 incorporates these factors in sections (3) and (6), which read, in pertinent part:

> The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
>
> . . .
>
> (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
>
> . . .
>
> (6) The mental and physical health of all individuals involved ...

■ It is important to our decision that the trial court expressly determined the best interest of the child based on 452.375 R.S.Mo and made the necessary findings required by that statute. The Court's judgment stated "the Court has considered all relevant factors set forth in sections 452.375 R.S.Mo. and finds that modification of the physical custody plan would serve Sean's best interest." Simply because the court also applies the *Michel* test does not require reversal if the court's judgment does not violate the statute and properly considers all relevant factors. Our ultimate concern is whether the court's judgment comports with the applicable law, makes the required findings and reaches a fair result. It does not appear equitable or productive to reverse because the court also referenced a legal theory that did not result in the harm which occasioned the repudiation of that theory. *See Stowe v. Spence*, 41 S.W.3d 468 (Mo.

---

**3.** Section 452.377.10 provides as follows:

If relocation is permitted:

(1) The court shall order contact with the nonrelocating party including custody or visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the nonre-

locating party unless the child's best interest warrants otherwise; and

(2) The court shall specify how the transportation costs will be allocated between the parties and adjust the child support, as appropriate, considering the costs of transportation.

banc 2001). This is especially true when we treat child custody because the interests of children are not best served by indeterminate litigation where the court's findings support the applicable legal standard.

It is important to note that we are not deciding mother's right to relocate. She clearly has a right to do so. The issue here is whether it is in Sean's best interest to remain in mother's custody and therefore relocate or to transfer custody to father, as he requests.

Father argues that relocation is adverse to Sean's best interest because visitation with his father would require Sean, a seven year-old child, to make frequent flights between New Hampshire and St. Louis. Father notes that the court's visitation plan requires Sean to make sixteen flights every year, and father argues that such frequent travel would be disruptive to a child of tender years.

There is authority for the proposition that frequent travel may run contrary to a child's best interest. In *Marriage of Roedel*, 550 S.W.2d 208 (Mo.App.1977) we reversed an order that required a five year old child to make twelve unattended flights a year. We reasoned that "frequent flights will undoubtedly be disruptive and upsetting to a young child." *Id.* at 210. But here the child is seven, not five. Further, nothing in the court's plan prohibits father from traveling to New Hampshire rather than Sean traveling to St. Louis. We agree that frequent travel can have a deleterious effect on a child of tender years but we must defer to the trial court's determination that in this case, the travel is not so excessive as to render relocation adverse to Sean's best interests.

Father next argues that there was no substantial evidence that the relocation to Portsmouth, New Hampshire is in the best interest of Sean. He argues that all the evidence tending to show that it was in Sean's best interest to relocate to Portsmouth was admitted only for the limited purpose of showing mother's state of mind. He correctly points out that the Student Teacher Handbook and the hearsay testimony concerning the school and daycare facilities in Portsmouth were admitted only to prove mother's state of mind. He correctly points out that such evidence cannot then be considered to establish that the schools in Portsmouth are comparable or better than those in the Mehlville school district because it is improper to employ hearsay to arrive at such a conclusion. The court's conclusion, however, that there was "[c]redible evidence ... that the curriculum in the schools in the Portsmouth area were comparable or better than the school the child currently attends" is a factual conclusion unnecessary to the ultimate holding in the case; namely, that it is in Sean's best interest to relocate with his mother to Portsmouth, New Hampshire.

Contrary to father's claim, there is considerable evidence that sheds light on the best interests of Sean. The court may properly consider that mother has always been the sole legal custodian and primary caretaker of Sean, her evident love for Sean, the fact that she researched the opportunities available in Portsmouth, and concluded that they were as good as those in Sean's present school. All this tends to show the quality of mother's care for Sean. We held today in a similar case, *Brethorst v. Brethorst*, No. ED77314, that the 1998 amendments "broadened the inquiry in a relocation case to any substantial evidence bearing on the good faith of the custodial parent and/or the best interests of the child."

Father was free to put on evidence to show that mother did not proper-

ly care for Sean, or that she was mistaken in her belief about the quality of opportunities available in Portsmouth, but offered no such evidence. We reject father's suggestion that mother is *required* to bring forth witnesses from the Portsmouth school district and community to testify to their quality before a relocation is allowed.

■■■■ In addition, the trial court found:

> Mother's employment with Hasbro provides her with career opportunities that do not currently exist in the St. Louis area. Her employment with Hasbro also provides benefits which were not available to her at her former employment, including: significantly cheaper health insurance, participation in a Pension Plan, tuition reimbursement, scholarships for employee children, and YMCA membership.

While this evidence directly concerns only mother's employment, it is indirect evidence of Sean's best interest. First, mother's increased salary and potential for advancement have a direct impact on Sean's standard of living. Second, mother's unhappiness with the working conditions and career opportunities at Trendmasters is likely to be diminished by her transfer to Hasbro. It is reasonable to believe that mother's greater job satisfaction will have a positive effect on Sean. Third, both the child scholarships and YMCA membership may have a direct influence on Sean's educational and recreational opportunities. We consider the following additional evidence in support of the trial court's judgment. Father has never lived with mother and Sean. And though counseling has in large measure alleviated their difficulties, father's relationship with Sean has at times been strained.

In its judgment, the trial court properly focused on Sean's best interests. It states: "The Court has considered all relevant factors set forth in Sections [sic.] 452.375 R.S.Mo. and finds that a modification of the physical custody plan would serve Sean's best interest." The record in this case provides substantial evidence showing that Sean's best interest is to remain in the primary custody of mother.

■■■■ Father also claims the trial court erred in finding that the relocation to Portsmouth would ensure him a realistic opportunity for visitation and an adequate basis for preserving and fostering his relationship with Sean. Father argues that the visitation schedule ordered by the court provides insufficient visitation during the school months because father will only be permitted to see Sean one weekend a month in St. Louis and limited times in Portsmouth. This argument neglects the fact that father can preserve and foster his relationship with Sean through means other than physical presence. The statute itself recognizes that relationships can be preserved and fostered over the telephone. § 452.377.10(1). Mother has also promised that Sean will have access to a home computer to send and receive e-mail from father. The court's modified custody plan therefore provides father with sufficient opportunity to preserve and foster his relationship with Sean under the circumstances, particularly in view of father's need to commit substantial time to the two children in his home as well as his fourth child who lives elsewhere but regularly comes for visitation.

■■■ Father also contends that the court erred in entering the visitation order without evidence that father could afford to pay for Sean's flights to and from St. Louis every other month. Mother testified that roundtrip flights run from about $250 to $280, per person. We note that father was free to put on evidence that he could not afford these transportation costs every other month, but failed to do so. Nothing in the record establishes that father cannot afford this.

The only case father cites where a court of appeals reversed the trial court's order granting a relocation is *Newell v. Rammage,* 7 S.W.3d 517 (Mo.App. W.D.1999). The facts in *Newell* are, however, very different from those here. In *Newell,* though mother and father were never married, they "lived together from the time of the birth of their first child . . . until their 'separation' " four years later. *Id.* at 519. Upon separating mother and father had joint custody and control of their children, were both actively involved in the children's lives, and shared the time on a fairly equal basis. *Id.* Here mother has always been the sole legal custodian. Father never lived with mother and Sean as a family, and does not share time with Sean on an equal basis with mother. *Newell* does not support father's argument.

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J., Concurs.

WILLIAM H. CRANDALL, J., Concurs.