**Russell Loren SIEGFRIED, n/k/a Russell L. DeLotell, and A.M.D.-R., by her Next Friend, Russell Loren Siegfried, n/k/a Russell L. DeLotell, Plaintiffs/Respondents,**

v.

**Linda M. REMAKLUS, Defendant/Appellant.**

**No. ED 78949.**

Missouri Court of Appeals, Eastern District, Division One.

Nov. 20, 2001.

Susan K. Roach, Law Offices of Susan K. Roach, Chesterfield, MO, for appellant.

Aaron M. Staebell, Baerveldt, Bagsby, Lee & Green LLC, St. Charles, MO, for respondents.

Mark W. Kiesewetter, St. Louis, MO, Guardian Ad Litem.

KATHIANNE KNAUP CRANE, Judge.

Mother, Linda M. Remaklus, appeals from that part of the trial court's judgment which permitted father, Russell Loren De-Lotell, to relocate with their minor child from Missouri to California and which denied mother's motion to modify custody as a result of the relocation. The court ordered the parties to pay their own attorney's fees. Mother contends each of these rulings is erroneous. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The child who is the subject of these proceedings, A.M.D.-R., was born on January 8, 1990, in Tampa, Florida. Father and mother were not married. In August, 1990, father, mother, and child moved to the metropolitan St. Louis area. Neither parent then had or now has family members in this area. On April 19, 1996 father filed a petition to determine a father-child relationship, to obtain custody, and to declare child support. On November 16, 1996 mother brought the child to stay with father. On November 19, 1996, pursuant to the parties' consent agreement, the trial court entered a judgment and order of paternity which found father to be the child's natural father, awarded joint legal custody to both parents, and awarded primary physical custody to mother, with liberal visitation to father. In late 1996, after entry of this judgment, father married Pam DeLottel (hereinafter "father's wife").

Although the November 19, 1996 judgment awarded primary physical custody to mother, mother voluntarily relinquished custody to father. From November 16, 1996 through 1997 the child resided with father and mother only occasionally visited the child. On August 4, 1997 the court gave father temporary custody. In February, 1998 the court modified the judgment, by consent of the parties, and awarded father primary physical custody and visitation and temporary custody to mother. Mother was also ordered to pay child support to father. Mother's visitation and temporary custody consisted of six weeks in the summer, every other weekend and alternate Wednesdays during the school year, as well as certain holiday periods. Mother exercised summer visitation but was inconsistent in exercising weekend and Wednesday visitations. During the school year the amount of visitation mother actually exercised was equivalent to one weekend a month.

Father's father-in-law, who operated a large, family-owned conveyor system business in California, passed away in February, 2000. Father's wife's sister attempted to run the business, but was unsuccessful. Father's wife, who has an M.B.A. and twenty-four years experience as a business school professor, banker, marketer, and consultant, was the only family member with the expertise to run the business. Father is a licensed real estate and mortgage salesman who could become licensed in California after a one-month period of classes and examinations.

Father gave verbal notice to mother in March, 2000, that he intended to move himself and the child to California because father's wife was going to take over the family business. On April 28, 2000, mother filed a motion to modify custody to obtain primary physical custody of the child and for an order of support and attorney's fees. On May 15, 2000, pursuant to Section 452.377.2 RSMo (2000), father sent written notice to mother, through her attorney, of his intention to move to Simi Valley, California. Father filed cross-motions to obtain court permission to relocate the minor child to California and for an order to hold mother in contempt for failure to pay child support ordered under the 1998 modification. In late September, 2000, father's wife moved to California to take over the family business.

The court heard the case on November 15, 2000 and December 6, 2000. Father testified that the reason for the proposed relocation was to keep child in the same household. The child had lived with father and his wife as a family unit since 1996. Father's wife had moved to California to take over the family business because she was the only family member who had the education and experience to do so. The child attended school in father's school district and father had been primarily involved in her education and activities. The child would attend a comparable school in California, would live in a house with her own room, and had made new friends and met wife's extended family in California on previous trips. The home would be within a short commute from an airport which had reasonably-priced fares to St. Louis so that the child could travel to St. Louis for weekend visitation as well as more extended periods. Father, who had maintained a flexible work schedule to accommodate the child's needs, would continue to have a flexible work schedule in California. He planned to become licensed in California, had a job offer, and anticipated an increased income because real estate prices were higher, the commission structure was similar, and the market was strong.

The trial court found that there was insufficient evidence of a change in circumstances of either the child or father to

warrant a change in father's primary physical custody. The trial court further found that mother failed to show that the best interests of the child required primary custody to be transferred to her. The trial court found relocation to be in the best interests of the child and found that father's motive in seeking relocation was to serve the child's best interest. It adopted a parenting plan that would assure that the child would have frequent, continuing, and meaningful contact through custody, visitation and telephone contact with mother. Under the plan, mother's visitation was to be at such times as the parties could agree. If an agreement could not be reached, the plan gave mother custody one weekend each month from September through May, six weeks during the summer months, seven days during spring break, and that part of Christmas vacation beginning on December 26. The plan also allowed mother to exercise custody "at all reasonable times in the area where the child resides upon ten days notice to Father." In order to maximize mother's time with the child, the plan required that the child take a direct flight to and from her destination.

The court found that mother had failed to take part in the child's education or activities other than during her visitation periods, so that relocation would not significantly change the relationship between mother and the child and that the child would still have frequent, continuous and meaningful contact with mother. It specifically found that mother and the child's relationship could be furthered by telephone and e-mail communications. The court found that under the terms of the parenting plan mother would not have substantially less time with the child after the move than what she had been exercising in recent years.

## DISCUSSION

■■■■ Our review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Suffian v. Usher*, 19 S.W.3d 130, 135–36 (Mo. banc 2000). We view the evidence and permissible inferences drawn therefrom in the light most favorable to the judgment. *Id.* We give more deference to the decision of the trial court in a custody matter than in other matters. *Id.* at 136. We will affirm the court's custody determination unless we are firmly convinced that the welfare of the child requires a different disposition. *Bell v. Bell*, 987 S.W.2d 395, 401 (Mo.App.1999).[1]

### A. *Physical Custody*

In her first point mother contends that the trial court erred in denying her motion to transfer primary physical custody of the

---

1. Mother's three volume record on appeal does not comply with Rule 81.12's requirements that the file be arranged chronologically, that the file not include certain classes of pleadings and other matters, and that materials not be placed in the record more than once. The purpose of the legal file is to give the appellate court exact copies of the relevant documentary record necessary to decide the issues on appeal and to facilitate the accessibility of these documents. *Kent v. Charlie Chicken, II, Inc.*, 972 S.W.2d 513, 516 (Mo.App. E.D.1998). The inclusion of unnecessary and duplicate documents makes locating the relevant documents difficult. *Id.* at 517. The court should not have to search through a multi-volume file for relevant pleadings and other relevant information. *Wood v. Centermark Properties, Inc.*, 984 S.W.2d 517, 520 (Mo.App. E.D.1998). However, because this case involves an important issue of child custody, we have elected to consider the merits of the appeal.

child to her because father's desire and need to relocate outside the State of Missouri constituted a substantial and continuing change in circumstances and the proposed relocation was not in the best interest of the child.

In a modification proceeding, the trial court first determines whether, based on facts that have arisen since the previous decree, a substantial change has occurred in the circumstances of the child or the child's custodian. *Pokrzywinski v. Pokrzywinski*, 8 S.W.3d 222, 224 (Mo.App. 1999). Next, the court considers whether, in light of the changed circumstances, a modification is necessary to serve the best interests of the child under Section 452.410 RSMo (1994). *Id.* Because modification involves child custody, we accord the trial court greater deference than in other cases. *Id.*

A court shall not modify a prior custody decree unless "[i]t finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Section 452.410.1 RSMo (2000). Section 452.375.2 RSMo (2000) lists eight essential factors a court must consider in determining the best interests of the child.

■ Mother first argues that father relocated the child without giving the proper notification to mother, in violation of Section 452.377.5. This argument is not preserved for our review because it was not encompassed in the point relied on, *Chancellor Development Co. v. Brand*, 896 S.W.2d 672, 678 (Mo.App.1995), and mother did not challenge the notice in the trial court. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982). Further, it is not a matter for plain error relief be-

cause mother does not specify what was defective about the notice. Further, the record contains father's written notice, which complies with Section 452.377 RSMo (2000), and mother acknowledged that she received this notice in her motion for an order denying the request to relocate the minor child.

■ Mother next argues that relocation of the child to California, of itself, is a change in circumstance allowing a change in custody. Neither the father nor child relocated prior to the adjudication of father's request to relocate. The trial court found:

8. The credible evidence presented at trial did not establish a regular and substantial change of circumstances with regard to the situation of the child or Father so as to justify a transfer of primary residential custody from Father to Mother. In addition, Mother did not show that the best interests of the child required that primary residential custody be transferred.

Substantial evidence supports this finding. There was evidence that the move would allow the child to remain in the same family unit in which she had resided since she was six years old. She would attend a comparable school and would enjoy a comparable lifestyle and would be near father's wife's extended family. Because mother had not been participating in the child's education and activities when she was not exercising custody and had missed a number of weekend and weekday visitations, mother's contact with the child after the relocation would not be significantly less than was actually exercised when the child was in St. Louis. Therefore, the trial court could reasonably infer, as it did, that the child's move to California was not significant enough to warrant a custody modification. Accordingly, the tri-

al court did not err in finding that the proposed relocation was not a significant change of circumstances which mandated a change of custody.

■ Mother last argues that she adduced evidence that her circumstances had improved so that she could provide the child a nice home in a good school district near her place of employment and that this was a change of circumstance warranting a change of physical custody to her. The plain language of Section 452.410.1 RSMo (2000) requires that a moving party who seeks to modify a custody order must establish the occurrence of a substantial change in circumstances "of the child or his custodian." *Searcy v. Seedorff,* 8 S.W.3d 113, 117 (Mo. banc 1999). Information about the non-custodial parent is irrelevant under this part of Section 452.410. *Id.* Otherwise, "[t]he ability of a noncustodial parent to be heard by a court on the issue of custody of the parent's child at any time during the child's minority because the parent's conduct or environment has changed, without consideration for the circumstances of either the child or the third party custodian, poses a constant threat to the child's stable environment." *Id.*

The trial court's denial of mother's motion to modify custody was supported by substantial evidence. Point one is denied.

B. *Relocation*

In her second point mother claims that the trial court erred in granting father's request to relocate with the minor child to California because father did not establish the factors set out in Section 452.377 RSMo (2000), there was evidence that father did not have a job, a firm job offer, or a California real estate license, and that the move would not give mother a realistic opportunity for visitation or give child frequent, continued, and meaningful contact with mother.

Section 452.377 RSMo (2000), the relocation statute, was significantly amended in 1998. Under the previous version of this statute, courts allowed relocation if it was in the best interest of the child as measured by the four-part test first set out in *Michel v. Michel,* 834 S.W.2d 773, 777 (Mo.App.1992). The 1998 amendment created statutory requirements to be satisfied. However, this district continued to use the *Michel* test. *See e.g., Green v. Green,* 26 S.W.3d 325, 328 (Mo.App.2000). To be more consistent with Section 452.377.10(1) RSMo (Cum.Supp.1998) the Western District modified the fourth factor to read: "the realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the nonrelocating party with the child if the move is permitted." *Sadler v. Favro,* 23 S.W.3d 253, 258 (Mo.App.2000); *Boling v. Dixon,* 29 S.W.3d 385, 388 (Mo.App.2000).

On April 10, 2001 the Supreme Court held that, after the 1998 amendments, Section 452.377 RSMo (2000) requires a trial court to determine that the relocation: "(1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10." *Stowe v. Spence,* 41 S.W.3d 468, 469 (Mo. banc 2001). It further held that "*Michel*'s four-part test is inconsistent with these statutory requirements and shall not be used in determining the child's best interests." *Id.* As a result "Section 452.377 RSMo (2000) has broadened the inquiry in a relocation case to any substantial evidence bearing on the good faith of the custodial parent and/or the best interests of the child." *Brethorst v. Brethorst,* 50 S.W.3d 864, 867 (Mo.App.2001). The four *Michel* factors are now simply evidence, rather than a test, because the test is in the statute. *Id.*

■ In its judgment issued four months before the *Stowe* decision, the trial court made specific findings with reference to the four *Michel* factors. However, the trial court's use of the *Michel* test does not require us to reverse if the court's judgment does not violate the statute and properly considers all relevant factors. *Abernathy v. Meier*, 45 S.W.3d 917, 923–24 (Mo.App.2001). "Our ultimate concern is whether the court judgment comports with the applicable law, makes the required findings and reaches a fair result. It does not appear equitable or productive to reverse because the court also referenced a legal theory that did not result in the harm which occasioned the repudiation of that theory." *Id.* at 924. This is a case in which we can determine from the findings of fact and conclusions of law how the court weighed the statutory factors that are now being used in determining relocation cases. *See Kell v. Kell*, 53 S.W.3d 203, 206 (Mo.App.2001).

The trial court's findings satisfy Section 452.377 RSMo (2000) and *Stowe*. It specifically found that relocation was in the best interest of the child. Its finding that the request was made with the best interest of the child in mind was an implicit finding that the request was made in good faith.

■ Substantial evidence supports the trial court's finding that relocation was in the best interests of the child. The relocation would allow child to remain in the same family unit that she had been in since age six. The child would attend a comparable school, enjoy a comparable, if not better, standard of living,[2] the child would have an extended family through father's wife, and the child would be able to communicate with and visit mother on a simi-lar basis as before the move. Likewise, substantial evidence supports a finding that the request to relocate was made in good faith because the request was made to relocate the child in order to keep the child in the family unit in which she had been raised since age six, father was moving to join his wife who was the only family member with the expertise to take over the family business, the relocation could be accomplished without detriment to the child's education or standard of living, and mother could have telephone contact and visitation on a similar basis as she actually exercised prior to the move.

The trial court's judgment also complies with subsection 10. Subsection 10 requires that the court order visitation or custody rights sufficient to assure that the child has frequent, continuing, and meaningful contact with the nonrelocating parent. It also requires that the court specify how transportation costs are to be allocated and adjust the child support amount appropriately. Section 452.377.10 RSMo (2000). The trial court adopted as part of its judgment a revised parenting plan that specified how transportation costs were to be paid and allowed mother visitation rights similar to the visitation as she was in fact exercising prior to the litigation. Under the plan, father was to pay transportation costs for daughter's summer, spring break, and Christmas visits with mother. Father also was to pay for the second, fourth, sixth and eighth weekend visits between September and May, provided mother had paid for the previous weekend's visitation costs. We note that the trial court also kept mother's child support at $150.00 per month rather than ordering the Form 14 amount of $270.00,

---

2. Mother argues that there was evidence that father did not yet have a California license or job. However, there was substantial evidence from which the trial court could find that father could obtain a license after a month and that he had very good prospects of succeeding in his profession.

because of the transportation costs that mother would incur after relocation.

The trial court did not err in granting father's request to relocate the child to California. Point two is denied.

## C. Child Support

■ In her third point, mother asserts that the trial court erred in denying her request for child support. This point would have viability only if we held that the trial court erred in not transferring primary physical custody to her. Since we did not so hold, this point is denied.

## D. *Attorney's Fees*

In her fourth point mother contends that the trial court erred in not ordering father to pay her attorney's fees. Mother claims that there was substantial evidence from which the trial court should have concluded that mother was unable to pay her own attorney's fees and that father was in a better position to pay.

■ Section 452.355 RSMo (2000) authorizes the court to award attorney's fees. In considering whether to award attorney's fees, "[t]he court is to consider relevant circumstances, including the financial resources of the parties, the merits of the case and the actions of the parties during the pendency of the action." *Thomas,* 989 S.W.2d at 636. The court is an expert on attorney's fees and may award reasonable amounts as a matter of law. *Campbell v. Kelley,* 719 S.W.2d 769, 772 (Mo. banc 1986). The trial court found it appropriate that both parties pay their own attorney's fees after considering all of the circumstances and the progress of the litigation. There is no abuse of discretion. Mother instituted these proceedings, father was the prevailing party, mother's income exceeded her expenses, there was evidence that mother had financial resources from which she could pay her own

attorney's fees, and mother admitted she could pay her own attorney's fees.

The trial court did not abuse its discretion in denying mother's request for attorney's fees. Point four is denied.

The judgment of the trial court is affirmed.

WILLIAM H. CRANDALL, JR., P.J., and ROBERT G. DOWD, JR., J., concur.