Jacqueline Anne THOMAS, Respondent,

v.

Billy F. THOMAS, Appellant.

No. WD 55295.

Missouri Court of Appeals, Western District.

March 30, 1999.

---

**5.** Our resolution of Point I renders Bob's second and fourth points moot; consequently, we need not and do not discuss them.

M. Corinne Corley, Kansas City, MO, for Appellant.

Alison K. Blessing, Liberty, MO, for Respondent.

Before Presiding Judge HAROLD LOWENSTEIN, Judge PAUL SPINDEN and Judge VICTOR HOWARD.

LOWENSTEIN, Judge.

This is an appeal from an order following a motion to modify a child custody decree wherein the trial judge granted Jacqueline Thomas' (Mother) motion, as primary physical custodian, to permit the removal of her six year old daughter Samanthe from Missouri. Mother and her new husband, Scott Highland, proposed a move, with daughter, from Kansas City to Denver, Colorado. The child's father, Billy Thomas (Father) objected to the move and appeals the decision allowing the move. The court's order also allowed increased child support and awarded Mother some of her attorney's fees. It denied Father's motion to change custody from Mother to himself. In allowing Mother to move out of state, the court modified visitation allowing Father increased time and ordering Mother to pay a portion of the travel expenses. Father's four points on appeal are that the trial court erred (1) in failing to consider a change in custody because it had discretion to do so regardless of the apparent flaw in service of Father's motion on Mother; (2) in granting Mother's request to remove the minor child from the State of Missouri because it was not in the best interest of the child to permit Mother to remove the child; (3) in its calculation of child support because it failed to take into consideration the Mother's income potential and the income of respondent spouse, as well as the Form 14 offered by Father, which was supported by the evidence; and (4) in granting attorney fees to Mother because there was no evidence to support the award in that Father had no notice of fees as required by Missouri law. This court affirms.

Mother and Father were married in April 1980. Their child, Samanthe, was born in June 1992. Mother and Father's marriage was dissolved in April 1994. The dissolution decree ordered that the parties share joint legal custody, with Mother designated as primary physical custodian. Father was granted reasonable visitation and reasonable temporary custody. In addition, Father paid $214 each month as support for Samanthe.

Mother married Scott Highland in May of 1996. In early 1997, Mother and Mr. Highland learned that Mr. Highland's continuing employment with ProSource was contingent upon his accepting a mandatory transfer. The company's management force in the Kansas City area was cut back due to a loss

of business. By the time of the hearing, Highland had already commenced employment at the Denver facility of ProSource. Between 1993 and 1997, Mr. Highland's base salary increased approximately $20,000. His annual salary with ProSource was $43,000 per year. In addition to that salary Mr. Highland received a miscellaneous expense account totaling $6,000 per year for a package of $49,000 annually. His health insurance policy through ProSource included Samanthe. Father's income is $34,000 a year.

Mother's motion requested permission to remove Samanthe from Missouri due to Highland's job transfer to Denver. In her motion, Mother argued that Samanthe's best interest would be served by the move because the move would increase Samanthe's standard of living. She also cited the child's excellent relationship with Highland as well as Father's continued opportunity to have meaningful contact with the child albeit in Colorado. The evidence showed that Samanthe unquestionably loved and had a meaningful relationship with both parents.

In addition to allowing the Mother's move, the court, pursuant to the guidelines, determined the presumed amount of $570 was due per month in child support. The court increased Father's visitation both in Colorado and Missouri, including six weeks in this state, with Mother's being responsible for the expense of bringing the child to Father and retrieving the child from Father. The court found mother's attorney's fees to be $16,000, ordering Father to pay $2500 of that amount.

## I.

A bit of background information is necessary on the first point. Shortly after being served Mother's motion, Father filed but never served on Mother his motion for a change of custody. When this was brought to Father's attention at a pre-trial conference a month before the hearing on mother's motion, the court refused to hear Father's motion.

■ In his first point on appeal, Father contends that the trial court erred when it failed to consider a change in custody because it had discretion to do so regardless of the "apparent flaw" in service of Father's motion on Mother. Essentially, Father claims that some "unusual circumstance" occurred regarding service of Father's Motion to Modify. Father claims that the circuit clerk's office advised his counsel that Mother had been personally given a copy of Mother's motion to modify so that service was not necessary. Father claims that these "suspicious circumstances warranted more than the dismissive treatment given to the issue by the trial court." Although Father concedes that personal service of his motion did not occur, Father argues that his motion should be treated as a cross-motion with no requirement of service necessary. This court disagrees.

It is a fundamental rule of civil procedure that sets forth the requirements of issuance and service of process. Specifically, Rule 54.13(b)(1) governs personal service within the state on an individual.[1] Mother filed her Motion to Modify Decree of Dissolution of Marriage on March 31, 1997. Mother personally served Father on April 9, 1997. Father never filed a responsive pleading. On April 4, 1997, Father filed Respondent's Motion to Modify. This motion was never served upon Mother as required by Rule 54.13(b)(1).

■ Moreover, Rule 43.01 governs service of pleadings upon opposing counsel while an action is pending.[2] Unlike Father's conten-

---

1. Rule 54.13 Personal Service Within the State
   (b) How and on whom made. Personal service within the state shall be made as follows:
   (1) On individual. Upon an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of fifteen years,

or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process.

2. Rule 43.01 Service of Pleadings and Other Papers

   (c) Service–How and by Whom Made. Unless otherwise ordered by the court, service required by Rules 43.01(a) and 43.01(b) may be made in the following manner:

tion, service is necessary even with a cross-motion. Father's motion to modify does not contain a certificate of service indicating service on opposing counsel as required by Rule 43.01(d). Father attempted to meet the service requirement by filing a Certificate of Service on August 11, 1997 (the date of trial) stating that "[o]n 31 July 1997, my paralegal placed in the regular, U.S. Mail, first-class postage pre-paid, a copy of the file stamped Respondent's Motion to Modify, properly addressed to Allison Blessing (Mother's counsel) at her address of record in this case." This attempt simply did not comply with the service requirements found in Rule 43.01(d). Not until August 13, 1997 did personal service finally occur. As such, and in accordance with the Rules, the trial court did not commit an abuse of discretion in refusing to consider Billy Thomas' motion for change of custody at the hearing on August 11, 1997. Point denied.

## II.

■ In his second point on appeal, Father argues that the trial court erred because it was not in the child's best interests that she leave her father and her family to live in Colorado. Where the custodial parent seeks to remove a child from the state for more than ninety days, he or she must obtain court permission unless the non-custodial parent consents to removal. Section 452.377, RSMo 1986. Moreover, a court may permit removal of a minor child from the jurisdiction when it clearly serves the best interests of the child. *Carter v. Schilb,* 877 S.W.2d 665, 667 (Mo.App. W.D.1994).

■ In matters pertaining to custody rights, this court gives deference to the trial court's assessment of what serves the best interests of the child and that judgment will not be disturbed on appeal unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Shoemaker v. Shoemaker,* 812

S.W.2d 250, 253 (1991); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision is presumed correct, and the appellant has the burden of showing error. *Kerr v. Jennings,* 886 S.W.2d 117, 123 (Mo. App.1994). As in other court tried cases, only evidence and reasonable inferences favorable to the judgment will be considered.

■ Four factors have been recognized in determining whether to allow the custodial parent to remove a child from the state. *Carter,* 877 S.W.2d at 667. These are: (1) the prospective advantages of the move, including a consideration of whether or not the move will improve the general quality of life for the custodial parent and child; (2) the custodial parent's motives in relocating, including a consideration of whether or not he or she is attempting to defeat or to frustrate the noncustodial parent's visitation rights; (3) the noncustodial parent's motives for opposing relocation, including a consideration of the extent to which it is intended to support; and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if the move is permitted. *Id.* at 667–668; *Shaw v. Shaw,* 951 S.W.2d 746, 748–49 (Mo.App. W.D.1997); *Maher v. Maher,* 951 S.W.2d 669, 672–73 (Mo.App. E.D.1997).

The prospective advantages of the move weigh in favor of Mother moving with her daughter to Colorado. This court believes that the move will improve the general quality of life for Mother and child. Mother testified that due to Highland's mandatory transfer with ProSource and the increase in salary that went along with the transfer, she was able to terminate her employment and become a stay at home mother. Mother and Highland carefully considered the neighborhood and school district when choosing their new residence. Mother testified that she contacted the Chamber of Commerce in Denver and read books to help her become more

---

1. Upon the attorney by delivering a copy to the attorney or by leaving a copy at the attorney's office with a clerk or secretary or with an attorney employed by or associated with the attorney to be served, by transmitting a copy to the attorney's office by facsimile transmission, or by mailing a copy to the attorney at the attorney's last known address;

2. Upon a party, by delivering or mailing a copy to the party, by transmitting a copy to the party by facsimile transmission, or by serving a copy in the manner provided for service in Rule 54.13.

aware of the public and private school choices in the area. After careful consideration, Mother and Highland decided to purchase a home in the Cherry Creek School District if the court permitted a move to Denver. In addition to choosing a neighborhood with nearby educational opportunities, various recreational opportunities such as a public park and swimming pool were also fairly close. With the move to Colorado, the child's general quality of life will improve in that the child will have the advantage of her mother staying at home and caring for her, while living in a stable environment with two mature adults.

As to the parents' motives, factors (2) and (3), both expressed nothing but love and concern for their daughter's best interests, and both indicated the belief that having a significant and meaningful relationship with their daughter was important. Mother testified that the child's relationship with her father is important and that she planned to "co-parent" with Father by initiating phone calls between the child and her father, making copies of her report cards, school work and school pictures for Father. In an apparent effort to encourage the bond between the child and Father, Mother suggested that Father's summer visitation be increased from two weeks each summer to six weeks. Mother further offered to be responsible for all the transportation expenses incurred for the child traveling between Kansas City and Denver for her summer visitation. In addition, Mother offered to be responsible for the transportation cost for Father to have an extended visitation with the child over the Christmas holiday. Mother also offered to alternate the Thanksgiving holiday and the spring break holiday and to be responsible for transporting the child to Missouri during Father's custody period on those occasions. The evidence and reasonable inferences support a finding that Mother's motive in moving to Colorado was clearly to be with her new husband and not to deprive Father of his visitation rights with his child.

The third factor to consider in allowing a custodial parent to remove a child from the state is the non-custodial parents motives for opposing relocation. Again, in this case, both

Father and Mother expressed basic love and concern for their daughter's best interests. Father cited this court's decision in *Carter* in arguing that it is not in the child's best interests that she leave her father and his family and move to Colorado with her mother and Mr. Highland. However, this court holds that the facts in *Carter* are not analogous to the facts in the case at bar. For instance, in *Carter*, economically speaking, there was no evidence that Mother and her new husband would be better off in Arizona than Missouri. In *Carter*, the new husband would collect on his disability policy wherever they live, and Mother had no plans of reentering the work force. On the other hand, in the present case, Highland sought to continue his employment with ProSource. In order to do this, Highland was required to take a mandatory transfer to Colorado. It is clear from the cases that "[i]n our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children." *In re Marriage of Greene*, 711 S.W.2d 557, 564 (Mo. App.1986).

■ The fourth and final factor relevant in determining the appropriateness of allowing a custodial parent to remove a child from the state is the realistic opportunity for visitation, which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if the move is permitted. *Shaw*, 951 S.W.2d at 749. Father argues that the child's move to Colorado will preclude him from exercising his rights of visitation and temporary custody to the extent he previously exercised them. It goes without saying that in a situation such as this one, Father and other relatives may indeed "experience some difficulties in visiting the [child] due to the increased distance; however visitation privileges of the noncustodial parent are not 'insuperable obstacles when removal of a minor child to another state is at issue.'" *In re the Marriage of Cornish*, 780 S.W.2d 62, 65; citing *In re Marriage of Bard*, 603 S.W.2d 108, 109 (Mo. App.1980). "Even where removal will make visitation more difficult, a trial court may

properly permit removal of the children when it is in their best interests." *In re Marriage of Cornish*, 780 S.W.2d at 65; citing *In re Marriage of Wofford*, 589 S.W.2d 323, 326 (Mo.App.1979).

In *Cornish*, the mother initiated a motion to modify decree to permit her to move the minor children to the state of Wisconsin. In that motion, the mother cited a job transfer as necessitating the move to Wisconsin. The evidence presented was that the mother's new job would enhance her career and permit her to spend more time with her children. In addition, the mother's supervisor testified that the new position would provide increased opportunity for advancement with her company. In upholding the trial court's decision to permit the mother to remove the child from Missouri, the court in *Cornish* stated that "past custody of a child by the moving party and the need of the parent to move from the state are sufficient facts, if proved, to warrant permission to remove a child from the jurisdiction. *In re Marriage of Cornish*, 780 S.W.2d at 64.

The evidence here established that Mother has every intention of continuing Samanthe's relationship with Father. She testified that the child's relationship with her father was important, and that she planned to "co-parent" with Father by initiating phone calls between Samanthe and her father, making copies of her report cards, school work and school pictures for the Father. Moreover, Mother even suggested that Father's summer visitation be increased from two weeks each summer to six weeks. Mother offered to take care of all the transportation expenses incurred in traveling, and offered to take care of Father's transportation costs to allow for an extended visitation with Samanthe over the Christmas holidays. Mother also offered to alternate the Thanksgiving holiday and the spring break holiday and to be responsible for transportation costs on those occasions. Clearly, under these facts, a realistic opportunity for visitation does exist that will provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.

A review of the evidence, much of which is undisputed, shows that the trial court's decision to grant Mother's request to move the child to Colorado was in the child's best interest and thus was not in error. Point denied.

III.

Appellant's third point on appeal asks this court to find that the trial court erred in its calculation of child support because it failed to take into consideration a) the Mother's income potential; b) the income of respondent spouse; and c) the Form 14 offered by Father.

Under a), Father argues that the Form 14 upon which the trial court relied was not supported by the evidence, since no income was imputed to Mother. She was pregnant at the time of the hearing and decided to stay at home with Samanthe.

A trial court may impute income to a parent to prevent him or her from escaping responsibilities to support a child or children by deliberately reducing their income. *Walker v. Walker*, 936 S.W.2d 244, 247 (Mo.App.1996). "In order to avoid such a situation, a court may, *in proper circumstances*, impute income to a spouse according to what that spouse could earn by use of his or her best efforts to gain employment suitable to that spouse's capabilities." *Id.*; quoting *Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo.App.1994) [emphasis in original]. "Proper circumstances" have been considered to include situations where a parent has voluntarily reduced his or her income without justification. *Devries v. Devries*, 804 S.W.2d 825, 827 (Mo.App. W.D.1991). Also included are situations where a parent involuntarily lost a job but (1) failed to use his or her best efforts to obtain a new job, *In re Marriage of Garrison*, 846 S.W.2d 771, 776 (Mo.App. S.D. 1993); (2) refused to accept employment offers, *Luker v. Luker*, 861 S.W.2d 195, 199 (Mo.App.1993); or (3) failed to show that the unemployment was other than temporary, *Foster v. Foster*, 844 S.W.2d 559, 562 (Mo. App. E.D.1992). *Walker*, 936 S.W.2d at 247–48. In the case at bar, the trial court had sufficient evidence to conclude it was in the child's best interest to have the mother stay

at home. *Quackenbush v. Hoyt*, 940 S.W.2d 938, 942-3 (Mo.App.1997). The court was not required to impute income to Mother.

■ With regard to argument b), "[a] trial court cannot consider the income of a stepparent in calculating the presumptively correct child support amount for a child under Form 14. *Burton v. Donahue*, 959 S.W.2d 946, 948 (Mo.App.1998); citing *Gal v. Gal*, 937 S.W.2d 391, 394 (Mo.App.1997). Trial courts may indeed consider the income of a spouse in determining whether a substantial change in circumstances has occurred, however Form 14 does not incorporate the income of a present spouse into its mathematical calculations. *McMickle v. McMickle*, 862 S.W.2d 477 (Mo.App. W.D. 1993); see also Section 452.370, RSMo.[3] "Rule 88.01(b) is derived from Section 452.340 which provides for the computation of presumed child support and requires the court to consider the 'financial resources and needs of the parents when calculating child support. However, Section 452.340, unlike Section 452.370, does not require the income of [Highland] to be added in. Form 14 does not incorporate the income of a cohabitant in its mathematical calculation." *Gal*, 937 S.W.2d at 394; citing *McMickle v. McMickle*, 862 S.W.2d 477 (Mo.App. W.D.1993). As such, this court holds that the trial court did not err in its calculation of child support. Point denied.

### IV.

■ In his final point, Father seeks relief from the court's judgment where he was ordered to pay $2500 to Mother for her attorney's fees. The court had found Mother had incurred reasonable and necessary costs and attorney's fees of $16,039.57. Father asserts: 1) he did not receive adequate notice of the request for attorney's fees; and 2) there was no evidence to support the amount of this award.

■ Missouri statutory law allows a court, after considering all relevant factors, to award a reasonable amount of attorney's fees, including services rendered prior to suit and after entry of final judgment. Section 452.355 RSMo, Cum.Supp.1998. The court is to consider relevant circumstances, including the financial resources of the parties, the merits of the case and the actions of the parties during the pendency of the action. *Newman v. Newman*, 717 S.W.2d 568, 570 (Mo.App.1986). A trial court is given considerable discretion in the award of fees, and is considered an expert on the necessity, reasonableness and value of fees, and its award will be reversed only on a determination it abused its discretion. *Dent v. Dent*, 965 S.W.2d 230, 239 (Mo.App.1998).

Father says he did not have adequate notice nor a full opportunity to be heard on the attorney fee question. He cites *Daily v. Daily*, 912 S.W.2d 110 (Mo.App.1995). In *Daily*, the trial court awarded fees to a party who did not plead nor put on any proof of attorney's fees. *Daily*, 912 S.W.2d at 114. The motion to modify did not request attorney's fees, nor did the party who obtained the fees request or address the issue at trial; therefore the appellate court reversed that portion of the judgment. *Id.;* see also *Doll v. Doll*, 819 S.W.2d 739, 741 (Mo.App.1991) (where appellate court overturned an award where motion for fee was not verified nor were affidavits attached nor did the party adversely affected have the opportunity to

---

3. Section 452.370 Modification of maintenance of support decrees—relevant factors—burden of proofdeath or remarriage—emancipation of child—parties—jurisdiction—change of address—process—custody issues

1. In a proceeding for modification of any child support or maintenance award, the court, in determining whether or not a substantial change in circumstances has occurred shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or the person with whom he or she cohabitates and the earning capacity of a party who is not employed.

If the application of the guidelines and criteria set forth in Supreme Court Rule 88.01 to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more, then a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable.

2. When the party seeking modification has met the burden of proof set forth in subsection 1 of this section, then the child support criteria shall be determined in conformity with criteria set forth in Supreme Court Rule 88.01.

oppose the award of fees). In the case at bar, paragraph eight of Mother's motion as well as the prayer, sought reasonable attorney's fees. Father did have adequate notice on this issue.

Father further contends that there was no evidence to support the $2500 amount nor any amount for that matter. This point must also be denied when examined under the standard of review. He had notice Mother was going to ask for attorney's fees. Mother presented her attorney's fees for this case. Father does not contest the $16,037.59 figure as being unnecessary or unreasonable. The trial judge had a chance to see and observe the entire scope of these proceedings. Additionally, there was evidence here, in addition to the statutory factors, that Father's actions in hindering and delaying discovery of his employment and income added to the attorney's fees incurred by Mother and would merit consideration of the award. *Calhoun v. Calhoun*, 934 S.W.2d 14, 15 (Mo.App.1996) (when considering an award of attorney's fees, a court "may consider a spouse's conduct during the litigation which may have unfairly increased the other spouse's attorney's fees"). This court cannot declare an abuse of discretion by the court in its award. *Dent*, 965 S.W.2d at 239.

The judgment is affirmed.

All concur.