**Kurt Allen ROMANETTO, Appellant,**

v.

**Pamela S. WEIRICH (formerly Romanetto), Respondent.**

**No. WD 58576.**

Missouri Court of Appeals, Western District.

June 26, 2001.

---

Kyle D. Emmons, Columbia, for appellant.

Cynthia A. Suter, Moberly, for respondent.

Before JOSEPH P. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN and PATRICIA BRECKENRIDGE, Judges.

PER CURIAM.

Kurt Romanetto ("Father") appeals from a Judgment Modifying Decree of Dissolution entered in the Circuit Court of Macon County. In that judgment, the Circuit Court found that it was in the best interests of the couple's son that Pamela Weirich ("Mother") be granted legal and physical custody of the son and that she be allowed to relocate with her son to Ohio.

Father and Mother were married on August 3, 1988. On November 8, 1988, the couple had a son, Andrew Scott Romanetto.

On June 26, 1991, the couple's marriage was dissolved by decree of the Circuit Court of Macon County. The court ordered that the couple share joint legal custody of Andrew and granted Father physical custody of Andrew, subject to the rights of Mother to reasonable and liberal visitation. On August 30, 1996, the Decree of Dissolution was modified to provide the parties with joint legal and physical custody of Andrew with Father retaining primary physical custody. On October 7, 1999, the circuit court modified the decree and designated Mother as the primary physical custodian of Andrew subject to reasonable visitation by Father.

On December 5, 1999, Mother informed Father in writing of her intent to relocate with Andrew from Moberly, Missouri, to Montpelier, Ohio. Father responded in writing that he opposed such a move. Subsequently, Mother and Andrew moved to Ohio with Mother's husband.

On January 3, 2000, Father filed a Motion for Return of Child to the State of Missouri; a Motion to Modify Custody, Child Support, and Visitation; and a Motion for Temporary Custody. Mother answered those motions on February 14, 2000. On March 6, 2000, the circuit court conducted a hearing on Father's motions. On March 31, 2000, the circuit court denied Father's motions and entered its Judgment Modifying Decree of Dissolution, finding that it was in the best interests of Andrew that Mother be granted legal and physical custody subject to reasonable visitation with Father. The court also found that allowing Mother to relocate with An-

drew to Montpelier, Ohio, was in Andrew's best interests.

In his sole point on appeal from that judgment, Father claims that the circuit court erred in allowing Mother to relocate with Andrew to Ohio because it failed to properly consider the requisite factors in determining whether the move was in Andrew's best interests. Father argues that the court failed to consider whether he would have a realistic opportunity for visitation that could provide an adequate basis for preserving and fostering his relationship with Andrew.

In child custody matters, this court gives deference to the trial court's assessment of what serves the best interest of the children, and the trial court's judgment will not be disturbed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Suffian v. Usher*, 19 S.W.3d 130, 135–36 (Mo. banc 2000). "We give even more deference to the judgment of the trial court in a custody matter than in other matters." *Id.* at 136. "Recognizing the superior position of the trial court to judge the credibility, sincerity and character of witnesses as well as other intangibles, we must view the evidence and any reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *In re Interest of S.E.P. v. Petry*, 35 S.W.3d 862, 867 (Mo.App. W.D. 2001). "Moreover, because the trial court is presumed to have acted in the best interests of the children, the trial court's assessment regarding what serves the children's best interests will be affirmed unless this court is firmly convinced that the children's welfare requires some other disposition." *Id.*

■ "[P]ursuant to § 452.377.9, a party seeking to relocate the minor child's residence anywhere, including within the state, must prove that the proposed relocation is made in good faith and is in the child's best interest." *Sadler v. Favro*, 23 S.W.3d 253, 258 (Mo.App. W.D.2000). In determining whether to allow a parent to remove a child from the state, the paramount concern is the best interest of the child. *Newell v. Rammage*, 7 S.W.3d 517, 522 (Mo.App. W.D.1999).

Father claims that the circuit court failed to properly consider all of the four-factors previously set forth in the case law for determining whether a move is in the best interests of the child: (1) whether the move will improve the general quality of life for the relocating parent and child; (2) the motives of the relocating spouse in deciding to move; (3) the motives of the non-relocating parent in opposing the move; and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the non-custodial spouse's relationship with the child if the move is allowed. *Citing Buschardt v. Jones*, 998 S.W.2d 791, 796 (Mo. App. W.D.1999); *McElroy v. McElroy*, 910 S.W.2d 798, 803 (Mo.App. E.D.1995). Specifically, Father claims that the trial court failed to sufficiently consider the impact that the move to Ohio would have on his visitation with Andrew and his relationship with him.

However, the Missouri Supreme Court has recently determined that the four-part test that has previously been applied in relocation cases should no longer be utilized based on amendments to § 452.377 in 1998. *Stowe v. Spence*, 41 S.W.3d 468, 469 (Mo. banc 2001). In *Stowe*, the Court stated:

> Prior to the 1998 amendment to section 452.377, the courts approved a relocation if it was in the best interests of the child. The child's best interests were measured by a four-part test set out in

*Michel v. Michel,* 834 S.W.2d 773, 777 (Mo.App.1992). *See also Jones v. Jones,* 903 S.W.2d 277, 282 (Mo.App.1995); *Wild v. Holmes,* 869 S.W.2d 917, 919 (Mo.App.1994). In lieu of this test, section 452.377 now requires the court to determine that the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10. *Michel's* four-part test is inconsistent with these statutory requirements and shall not be used in determining the child's best interests. *Id.* Accordingly, the four-part test is no longer applicable to determining the propriety of the trial court's decision to allow a parent to relocate with a child to another state.

Under *Stowe,* we must first determine whether the trial court erred in finding that the move was in the best interests of the child and that it was being made in good faith. *Id.* We must then determine whether the judgment complies with § 452.377(10) by ordering "custody or visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the non-relocating party unless the child's best interest warrants otherwise" and by specifying how transportation costs will be allocated and by adjusting child support, as appropriate, to account for those costs. *Id.*

█ In the case at bar, the circuit court specifically found that it was in Andrew's best interest to allow Mother to relocate with him to Ohio. The court noted that the move was necessitated by her husband's employment and that Mother did not work outside of the home. The court further found that, since Mother assumed physical custody of Andrew, his behavior, health, school performance, and ability to adjust to social situations had all improved

and that it was in Andrew's best interests to remain with her.

Mother's husband testified that he had worked for the Norfolk and Southern Railroad Company for the past twenty-six years. He testified that in November 1999, due to a recent merger, Norfolk and Southern had decided to cut back on its maintenance program. He stated that his supervisor told him that he would have to move in order to continue to work year-round. He testified that he would be unemployed three to four months a year if he did not move. He stated that he was the only one working in the family and that Mother stayed home with the three children. He indicated that Andrew's health insurance was provided through his employment and stated that in order to maintain year-round insurance for his dependants he was required to work year-round.

█ Evidence was also presented about Andrew's new home, neighborhood and city. "A good environment and stable home are primary considerations in determining a child's best interests." *Shaw v. Shaw,* 951 S.W.2d 746, 748 (Mo.App. W.D. 1997). Mother testified that the family was now living in a four-bedroom house and that Andrew had his own room. She further stated that he has more friends than he did back in Missouri and that he was doing well in school and attending church. Furthermore, the guardian *ad litem* recommended allowing Andrew to relocate to Ohio.

The foregoing evidence is more than sufficient to support the trial court's determination that allowing Mother to relocate with Andrew was in Andrew's best interests. Accordingly, we must next consider whether the trial court's finding was against the weight of the evidence.

█ The only argument set forth by Father that the move was not in his son's

best interests is his contention that the circuit court did not sufficiently consider the impact the move would have on his visitation with Andrew. Father argues that the move will reduce the amount of time that he will be able to spend with Andrew and that requiring him to meet Mother part-way to pick up Andrew for some of his visitation creates a rather large inconvenience for him. However, " '[e]ven where removal will make visitation more difficult, a trial court may properly permit removal of the children when it is in their best interests.' " *Thomas v. Thomas,* 989 S.W.2d 629, 634–35 (Mo.App. W.D.1999) (quoting *In re Marriage of Cornish,* 780 S.W.2d 62, 65 (Mo.App. E.D. 1989)).[1]

■ We simply cannot find that the trial court erred in determining that the factors favoring relocation outweighed the additional burdens related to visitation. "It is clear from the cases that '[i]n our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children.' " *Thomas,* 989 S.W.2d at 634 (quoting *In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo.App. S.D.1986)). " '[W]here the custodial parent, who has exercised the right of custody and control in a manner conducive to the welfare and development of the children, demonstrates a need to move from the state in order to achieve employment and financial betterment which will subserve the best interest of the children, judicial permission to remove the children is warranted.' " *In re Interest of S.E.P.,* 35 S.W.3d at 869 (quoting *Butler v. Butler,* 922 S.W.2d 18, 20 (Mo.App. E.D.

1996)). The circuit court's finding that the move was in Andrew's best interest was not against the weight of the evidence, and the trial court did not err in so finding.

■ We next consider whether the trial court could have properly found that Mother's efforts to relocate were being made in good faith. While the trial court did not make a specific finding on this issue, it is presumed to have found in favor of Mother on all of the issues necessary to support its judgment under the statute. *Weaver v. Kelling,* 18 S.W.3d 525, 528 (Mo.App. W.D.2000). "[W]here the court is silent as to which factors it considered, the trial court is presumed to have considered all the evidence and made its award in the best interests of the children based on consideration of the relevant … factors, unless the record indicates otherwise." *Id.*

The evidence in the record is clearly sufficient to support a finding that the move to Ohio was being made in good faith. Mother's husband testified about how his employment with Norfolk and Southern mandated that he relocate in order to continue to be employed year-round. No evidence was presented to contradict that testimony. Furthermore, Mother testified that she wanted Father to have continued and meaningful contact with Andrew.

Likewise, a finding that the move was being made in good faith was not against the weight of the evidence. Father has not directed us to any evidence in the record that would establish that Mother was not attempting to relocate based upon good faith reasons. In sum, the trial court did not err in determining that the move was made in good faith.

---

1. Even when the four-factor test was still being applied, our courts would rarely rule against the custodial parent based on the visi-

tation factor. *In re Interest of S.E.P. v. Petry,* 35 S.W.3d 862, 868 (Mo.App. W.D.2001).

■ Finally, having determined that the trial court did not err in finding that Mother should be allowed to relocate with Andrew to Ohio, we must consider whether the trial court's judgment complied with the provisions of § 452.377(10). In order to comply with that subsection, the trial court's order must provide for "custody or visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the non-relocating party unless the child's best interest warrants otherwise." In addition, the court's order must specify how transportation costs will be allocated and adjust child support, as appropriate, to account for those costs.

The trial court's judgment provided that Father had a right to reasonable visitation and temporary custody including, at a minimum: one-half of Christmas break each year, President's Day weekend, Spring Break, Easter Weekend, three weeks in June, three weeks in July, the first week of August, Labor Day weekend, and Thanksgiving weekend every other year. The judgment also provided that Mother would make Andrew available to talk on the telephone with Father at least once a week.

Father argues that the visitation provided in the circuit court's judgment does not provide an adequate basis for preserving and fostering his relationship with Andrew because the order decreased the amount of visitation assigned to him. Father claims to have been entitled to 108 days of visitation every year under the old decree. Father testified at the hearing that he "pretty much" took advantage of that visitation when he could.

■ Under the new visitation schedule, Father will have between 75 and 85 days of visitation with Andrew each year, depending upon whether it was his year for Thanksgiving weekend and depending upon the length of Christmas break that year. Thus, under the schedule set out in the judgment, father has been assigned minimum visitation rights of 20–22% of the year along with weekly telephone contact. While Father complains that his total number of visitation days have been reduced under the new judgment, "[i]t is simply unrealistic to expect that visitation between parent and child separated by [a significant distance] can be of the same frequency or duration as may have been feasible when they were located in the same city." *Maher v. Maher*, 951 S.W.2d 669, 676 (Mo.App. E.D.1997).

In this regard, we note that under the minimum visitation schedule set forth by the trial court, Andrew is to be transported from Montpelier, Ohio, to Macon, Missouri, and back for visitation at least nine times per year. Missouri appellate courts have held that requiring a parent or child to travel a substantial distance ten or more times per year for visitation is an excessive amount of travel. *See, In re Interest of S.E.P.*, 35 S.W.3d at 873; *Maher*, 951 S.W.2d at 676. Although the trial court's visitation schedule provides Father with fewer total visitation days than was previously authorized, the trial court attempted to maximize visitation without requiring excessive travel.

Finally, it is important to remember that the statute provides that the court must order "visitation and telephone access sufficient to assure that the child has frequent, continuing and meaningful contact with the non-relocating party *unless the child's best interest warrants otherwise.*" *§ 452.377(10)*, RSMo 2000 (emphasis added). Evidence was presented at the hearing (1) that Father was an alcoholic, (2) that he had encouraged Andrew not to take various medications that had been prescribed for him for his attention deficit disorder and epilepsy, (3) that his current

wife had made allegations of physical abuse against him, (4) that he had been separated from his wife for nine months, (5) that he was on probation for a DWI and had no drivers' license, (6) that DFS had investigated him for physically abusing his wife and one of her sons, and (7) that after visits with Father, Andrew would often exhibit behavioral problems.

As noted earlier, under our standard of review, we must view the evidence in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences to be drawn therefrom. *In re Interest of S.E.P.*, 35 S.W.3d at 867. Therefore, we must accept the foregoing evidence and disregard anything in the record to the contrary. Thus, even if the amount of visitation assigned to Father were deemed not to have provided for frequent, continuing and meaningful contact with Andrew, this evidence would support a determination by the trial court that Andrew's best interests warranted less visitation with Father than might otherwise be appropriate.

With regard to transportation, the trial court ordered Mother to transport the children to and from Father's home for the summer visitation. The court further ordered Mother to meet Father at his grandmother's house in Gardner, Illinois, to pick-up and deliver Andrew for the extended weekend visitation. We find that the judgment sufficiently dealt with the costs and burdens of transporting Andrew for visitation.

In sum, the trial court's judgment that Mother's relocation to Ohio was made in good faith and was in the best interest of Andrew was supported by substantial evidence and was not against the weight of the evidence. Furthermore, the judgment sufficiently complied with the provisions of § 452.377(10). Accordingly, the trial court

did not err in allowing Mother to relocate Andrew to Ohio.

The judgment is affirmed.

All concur.

