Katherine JoAnn DIXON, Appellant,

v.

Teddy Lee DIXON, Jr., Respondent.

No. WD 59480.

Missouri Court of Appeals,
Western District.

Submitted Nov. 7, 2001.

Decided Dec. 4, 2001.

Mary-Corinne Corley, Kansas City, for Appellant.

Thomas K. Thompson, Liberty, for Respondent.

Before JAMES M. SMART, JR., P.J., HAROLD L. LOWENSTEIN, and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

Katherine Dixon appeals the denial of her motion for relocation and the ruling changing primary custody of Anna Dixon, the minor child, to Teddy Dixon, the father of the child.

Katherine Dixon (Mother) raises three points on appeal. First, that the trial court erred in denying Mother's request for relocation because the trial court failed to apply the applicable standard for determining whether relocation should be allowed. Second, the trial court erred because application of the proper standard to the facts supports a finding that Mother acted in good faith when requesting relocation, and relocation would be in the child's best interest. Third, the trial court erred in changing custody of the child, because the court failed to apply the standard of substantial change in circumstances, and application of that standard does not support a determination that custody should be changed. The judgment of the trial court is affirmed.

Anna's date of birth is July 10, 1997. This case commenced in June of 1999, when Mother, the designated primary physical custodial parent, sought modification of the prior divorce decree to allow her and her child to relocate to Oklahoma where Mother had been offered a job. Father opposed the relocation and filed a countermotion requesting that the primary physical custody of the child be transferred to him. The trial court took evidence on two separate occasions on this matter.

Mother is a certified respiratory therapist. Mother's former employer, Park Lane Hospital, was forced to close on December 31, 1998. Mother testified that she applied at over thirty hospitals in the Kansas City area but did not secure a job, because they were looking for registered therapists rather than for a certified therapist.

Due to her failure to gain employment, Mother fell into dire financial straits. Mother was having trouble paying her rent and was forced to go on public assistance. Appellant took a loan from her mother to help meet her responsibilities. In March of 1999, Mother notified Father that she intended to relocate and proposed a plan regarding parenting time after relocation. On March 31, 1999, Mother was offered a job at her current employer in Muskogee, Oklahoma, the town where her parents and several siblings lived. Mother filed her motion to relocate in June of 1999. Mother relocated to take the job in Muskogee on November 22, 1999, testifying that

she believed she had to move or lose the job opportunity.

Mother's relocation made Father's Wednesday visits impossible. Mother did honor Father's weekend visitations, and Father had extra visitation with the child over Christmas and in January of 2000. At trial, there was conflicting evidence regarding phone access to the child.

After Mother's relocation to Muskogee, the child was placed in daycare while Mother worked. The daycare is in the hospital where Mother worked. Because of Mother's work schedule, the child is in daycare for twelve hours at a time, three days one week, and four days the following week.

At trial, Mother presented evidence that she had difficulty in obtaining employment in the Kansas City area. She said that there were openings for registered respiratory therapists, but not for certified therapists. Father presented contrary evidence demonstrating that a large number of jobs in Mother's field were advertised in the Kansas City Star. Father also presented evidence that Liberty Hospital had hired several individuals in Mother's field, some certified and some registered, for the salary range of fourteen to fifteen dollars per hour, during the time that Mother claimed she could not find employment. The evidence at trial also indicated that while in Kansas City, Mother sought compensation at the level of twenty-five dollars per hour, which was above the going rate. In Oklahoma, she was earning fourteen dollars and fifty cents per hour, plus health insurance benefits. Employment in Oklahoma has enabled Mother to start a registry program to become a registered therapist. The program lasts two years, and Mother expects to complete the program in the fall of 2002.

Father presented evidence that he and his current wife love the child and have made her a part of the family. Father's current mother-in-law, a teacher of child development and nutrition, also testified she had serious concerns about the child's nutrition in that the child would not eat vegetables or a full meal. Mother countered with evidence from the daycare teacher indicating that the child was well adjusted and was on the same level as the rest of the children in the playgroup.

Mother acknowledged that Father's new wife loved the child and interacted with the child well, but Mother stated she was concerned about confusion of parental roles because the new wife referred to herself as "mom" when addressing the child. When asked by the trial court whether she would return to Kansas City if the court denied the motion to relocate, Mother indicated that she would not. Mother is now married in Muskogee.

Following the first round of evidence, the trial court entered a "Judgment entry of Modification" on March 14, 2000. In that judgment, the trial court denied the motion for relocation, finding that Mother's reason for the proposed relocation was in part to limit Father's contact with the child and that there was insufficient evidence to support Mother's claim that the move would improve the general quality of life for either Mother or the child. The court then took Father's motion for change of custody under advisement. Finally, the trial court ordered Mother to return to the court's jurisdiction on May 1, 2000, for final disposition on Father's motion for change of custody. Subsequently, Mother, before the second hearing, filed a motion to reconsider in which she argued that the four factors under the *Michel*[1] test should

---

1. The *Michel v. Michel*, 834 S.W.2d 773, 777     (Mo.App.1992) four factors are as follows: (1)

result in a granting of the motion to relocate. After taking additional evidence on the issue of change of custody, the trial court entered a judgment ordering that custody be transferred to Father. Mother filed a motion for rehearing, again arguing in part the four factors under the *Michel* test. The trial court subsequently entered a nunc pro tunc order, which provided for Mother's visitation, and this appeal followed.

## Standard of Review

A review of the trial court's decision regarding a custodial parent's request to relocate with a minor child and a trial court's decision to change primary physical custody of the child is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *In the Interest of S.E.P. and M.C.P. v. Petry*, 35 S.W.3d 862, 866 (Mo. App.2001); *In re the Marriage of Lowe*, 860 S.W.2d 813, 816 (Mo.App.1993).

In child custody matters, this court gives deference to the trial court's assessment of what serves the best interest of the children, and the trial court's judgment will not be disturbed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.

*Romanetto v. Weirich*, 48 S.W.3d 642, 645 (Mo.App.2001). " 'Recognizing the superior position of the trial court to judge the credibility, sincerity and character of witnesses as well as other intangibles, we must view the evidence and any reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary.' " *Id.* (*quoting S.E.P.*, 35 S.W.3d at 867). Thus, "[w]e give even more deference to the judgment of the trial court in a custody matter than in other matters." *Suffian v. Usher*, 19 S.W.3d 130, 136 (Mo. banc 2000). "Moreover, because the trial court is presumed to have acted in the best interests of the child[ ], the trial court's assessment regarding what serves the child[ ]'s best interests will be affirmed unless this court is firmly convinced that the child[ ]'s welfare requires some other disposition." *S.E.P.*, 35 S.W.3d at 867.

## Point I

In her first point on appeal, Mother argues that the trial court erred in denying the motion for relocation, because the court failed to apply the applicable standard for determining whether relocation should be allowed in that the trial court did not consider whether the request for relocation was made in good faith and whether such a request served the child's best interest. In effect, Mother argues that because the findings by the trial court track the four-prong *Michel* test, the court applied the wrong standard. Yet, the *Michel* test was precisely what Mother had argued in her motion to reconsider and motion for rehearing. The Missouri Supreme Court decision in *Stowe v. Spence*, 41 S.W.3d 468 (Mo. banc 2001) upon which Mother now relies, was handed down after Mother filed her notice of appeal but before her brief was filed.

In *Stowe*, the mother was granted primary custody of the child. Following the

The prospective advantage of the move in improving the general quality of life for the custodial parent and the child; (2) the integrity of the custodial parent's motives in relocating; (3) the integrity of the non-custodial parent's motive for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support; and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child if relocating is permitted.

award of custody, the mother decided to relocate to Michigan which prompted the father to file a motion to modify. *Stowe*, 41 S.W.3d at 469. While the motion to modify was pending, the General Assembly adopted significant changes in section 452.377. *Id.* The Court noted that "[p]rior to the 1998 amendment to section 452.377, the courts approved a relocation if it was in the best interests of the child." *Id.* The best interests of the child were measured by the four-part *Michel* test. The Court held "[i]n lieu of this test, section 452.377 now requires the court to determine that the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10." *Id.* Finally, the Court held that "*Michel's* four-part test is inconsistent with these statutory requirements and shall not be used in determining the child's best interests." *Id.*

In *Abernathy v. Meier*, 45 S.W.3d 917 (Mo.App.2001), the Eastern District reviewed relocation based upon the *Michel* test. The court noted three essential differences between the *Michel* test and the standard announced in sections 9 and 10 of section 452.377, stating:

First, unlike the *Michel* test, section 9 makes no reference to the custodial parent's welfare. Rather than looking to the "general quality of life for the custodial parent and child" (*Michel*, 834 S.W.2d at 777), section 9 requires the court to determine only that the relocation is in the best interests of the child. § 452.377.9. This, presumably, is to be done in accordance with the factors laid out in § 452.375.2. Second, section 9 drops the requirement that the non-relocating parent show good faith in opposing the move and simply requires the relocating parent to shoulder the burden of establishing good faith in proposing the move. Third, section 10 of § 452.377 expands on the fourth part of the *Michel*

test. *Michel* required the court to determine whether there was a "realistic opportunity for visitation" that would "provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child ..." *Michel*, 834 S.W.2d at 777. Section 10 requires the court not only "to assure that the child has frequent, continuing and meaningful contact" with the non-custodial parent, but also requires the court to allocate the transportation costs and adjust the child support accordingly.

*Abernathy*, 45 S.W.3d at 923–24 (footnotes omitted). The court boiled down the differences to a standard of review, stating: "In determining whether the trial court complied with § 452.377.9 we examine the court's findings and the record to determine whether there is substantial evidence that the relocation is proposed in good faith and is in the best interest of the child." *Id.* at 924.

The court, in affirming the trial court's decision to allow relocation, stated:

It is important to our decision that the trial court expressly determined the best interest of the child based on 452.375 R.S.Mo. and made the necessary findings required by that statute. The Court's judgment stated "the Court has considered all relevant factors set forth in sections 452.375 R.S.Mo. and finds that modification of the physical custody plan would serve [child's] best interest." Simply because the court also applies the *Michel* test does not require reversal if the court's judgment does not violate the statute and properly considers all relevant factors. Our ultimate concern is whether the court's judgment comports with the applicable law, makes the required findings and reaches a fair result. It does not appear equitable or productive to reverse because the court

also referenced a legal theory that did not result in the harm which occasioned the repudiation of that theory. *See Stowe v. Spence,* 41 S.W.3d 468 (Mo. banc 2001). This is especially true when we treat child custody because the interests of children are not best served by indeterminate litigation where the court's findings support the applicable legal standard.

*Id.* at 924–25.

■ As in *Abernathy,* the trial court in the instant case expressly determined the best interests of the child based on § 452.375, setting forth each of the statutory elements and indicating that it had considered the factors, and found that the best interests of the child warranted a modification of custody, placing primary custody with the father. Further, in the instant case, the trial court made an express finding that Mother's motion was not brought in good faith when it found in part that "the Petitioner's motive[s] for removing said child from this jurisdiction was to limit Respondent's contact. . . ." The key thing, here, is that because the court found a lack of good faith in seeking the relocation and impliedly found it was not in the child's best interests to relocate, the trial court clearly would have reached the same result under either test. Therefore, there is no need to remand the case. Point one is denied.

### POINT II

In her second point on appeal Mother argues: "The trial court erred in denying relocation of the minor child, because application of the proper standard to the facts supports a finding that the appellant acted in good faith in requesting relocation due to her unemployment and securing of a job in Oklahoma, and consideration of all 'best interests' criteria leads to a determination that relocation was in the child's best interest." Mother, in this point on appeal, essentially argues that the evidence of her difficulty in finding employment as a certified therapist supported her contention that the proposed relocation was made in good faith. Mother further argues that the move, which allowed her to obtain a house with multiple rooms, get off of public assistance, obtain on-site daycare, and be surrounded by her family, was consistent with the child's best interest.

Mother agrees that the standard of review in this case is that set out in *Murphy v. Carron.* The point relied upon states that if the trial court applied the proper standard in determining the relocation issue, the facts would have supported the conclusion that the relocation was in the child's best interest and made in good faith. In other words, the facts of this case could have supported an alternative judgment to that which was rendered. The *Murphy v. Carron* standard, however, does not stand for the proposition that if "substantial evidence" and the "weight of the evidence" could support an alternative judgment the judgment must be reversed, but rather that only when the judgment rendered is not supported by "substantial evidence" or is "against the weight of the evidence" must the judgment be reversed. Mother's argument that the facts could or might support a conclusion that the motion for relocation was made in good faith does not state a basis for granting relief.

■ The true issue to be decided is whether there is substantial evidence to support the judgment rendered and whether that judgment is against the weight of the evidence. Here, in denying the motion for relocation, the trial court specifically found that the motion was brought in part to limit Father's visitation, which is equivalent to a finding that the motion was not brought in good faith. Although Mother had lost her job with Park

Lane Hospital through no fault of her own, there was also evidence that there were numerous jobs in Mother's field at about fourteen to fifteen dollars per hour during the time period she claimed she was unable to find work in the Kansas City area. The evidence also demonstrated that Mother demanded compensation in the range of twenty-five dollars per hour in Kansas City, but took a job in Oklahoma for fourteen dollars and fifty cents per hour. The only explanation Mother offered as to why she was able to find employment in a town with fewer hospitals is that she was a certified therapist as opposed to a registered therapist. Yet, the only evidence as to the impact of the distinction between registered and certified in hiring came from Mother herself. The fact that Mother told the court she would not return to Kansas City even if it meant losing custody of the child supported the trial court's judgment that the motion for relocation was made in part to deny Father's visitation. Her motion, therefore, was not in good faith, and the judgment was supported by substantial evidence, and was not against the weight of the evidence.

Mother cites *Romanetto* for the proposition that if a proposed move is financially beneficial to the child, relocation is allowable. Mother quotes this court: "[W]here the custodial parent, who has exercised the right of custody and control in a manner conducive to the welfare and development of the child[ ], demonstrates a need to move from the state in order to achieve employment and financial betterment which will subserve the best interest of the child[ ], judicial permission to remove the child[ ] is warranted." *Romanetto*, 48 S.W.3d at 647. Mother argues that by taking the job and relocating to Oklahoma, the child benefited because Mother was able to get off public assistance, quit borrowing money from relatives and stop relying on the kindness of friends who allowed her to live with them to survive. In addition, the job allowed her to have on-site daycare and paid health benefits.

The facts in *Romanetto* differ from those of the instant case. In *Romanetto*, the mother did not work outside the home. Due to a recent merger in the railroad industry, her current husband was informed that if he wanted to continue to work year round (which was required to maintain his benefits including heath care for the family), he would have relocate to Ohio. *Id.* at 646. This court, on appeal, made specific reference to the fact that the father of the child did not direct the court to any evidence in the record that would establish that the mother was attempting to relocate based on anything other than good faith reasons. *Id.* at 647. By contrast, here, the trial court found the motion was not brought in good faith when it stated that Mother brought the request to relocate in part to deny Father visitation. Further, the economic hardship to the child, which Mother claims the relocation alleviates, would appear from the evidence to have been created in great part by Mother when she maintained a salary requirement of some ten dollars per hour higher in Kansas City than the going rate, and higher than what she ultimately received in Oklahoma. Mother's second point is denied.

### Point III

In her third point on appeal, Mother states: "The trial court erred in granting the respondent's request for a change in custody, because the trial court failed to apply the proper standard for determining whether a change in custody should be ordered, that is, whether there was a substantial change in circumstances of the custodial parent or the minor child; and application of the proper standard to the facts does not support a determination

that custody should change." The gravamen of Mother's argument is that since the trial court did not make an express finding that a change of circumstances had occurred, the matter must be reversed and remanded. The error of Mother's reasoning is that the trial court "is not required to explicitly state what it found to be the change of circumstances, if the evidence is sufficient to support a finding that such a change occurred." *Baumgart v. Baumgart*, 944 S.W.2d 572, 576 (Mo.App.1997).

In *Brethorst v. Brethorst*, 50 S.W.3d 864, 865 (Mo.App.2001), the mother filed a motion to relocate to allow her to take her son to North Carolina. Mother had accepted a promotion with her employer, IBM, receiving a raise in her base salary of about nineteen percent plus a bonus of ten to fifteen percent. Mother testified that because IBM was downsizing the St. Louis office there were no positions available for her there. *Id.* The trial court denied the motion to relocate,[2] but did not make a specific finding regarding change of circumstances. *Id.* In affirming the trial court's decision, the Eastern District explained that a specific finding was not necessary, stating:

> In a modification proceeding, the court first determines whether a substantial change has occurred in the circumstances of the child[ ] or the child[ ]'s custodian. Next, the court considers whether, in light of the changed circumstances, a modification is necessary to serve the best interests of the child[ ]. Thus, the court does not consider the best interests of the child[ ] unless the court makes the initial determination that a change in circumstances has occurred. Where, as here, the trial court did not make specific findings of

fact and conclusions of law, all facts upon which no specific findings have been made should be interpreted as having been found in accordance with the result reached.

*Brethorst*, 50 S.W.3d at 867 (citations omitted). Thus, concluded the court, "implicit in the court's finding that it was not in the child[ ]'s best interests to move is a predetermination of changed circumstances." *Id.* Likewise, implicit in the instant case, where a change in custody was granted, is a finding that a substantial change in circumstances had occurred. Further, it is obvious that Mother's move to Oklahoma, and unwillingness to return to the Kansas City area, constituted a substantial and continuing change of circumstances because of the effect of the move on Father's access to visitation. Section 452.411 RSMo 1994. Also, due to Mother's work schedule, the child is in daycare at twelve-hour intervals several days a week, when previously she was not. Mother's third point is denied.

### Conclusion

The judgment is affirmed.

LOWENSTEIN and ELLIS, JJ., concur.

---

**2.** The trial court in *Brethorst* denied both mother's motion to relocate and father's motion to modify custody.